**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| POWERWATCH SYSTEMS LLC,<br>*Plaintiff,*<br>v.<br>NANYA TECHNOLOGY CORPORATION,<br>*Defendant.* | C.A. No. 2:26-cv-871<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff PowerWatch Systems LLC ("PowerWatch" or "Plaintiff"), for its Complaint against Defendant Nanya Technology Corporation (referred to herein as "Nanya" or "Defendant"), alleges the following:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2. Plaintiff PowerWatch is a limited liability corporation organized under the laws of the State of Texas with a presence in Longview, Texas, and an address at 1400 Preston Road, Suite 461, Plano, Texas 75093.

3. Upon information and belief, Nanya is a corporation organized under the laws of Taiwan with a place of business at No. 98 Nanlin Road Dake Vil., Taishan District, New Taipei City, Taiwan. Nanya is a publicly traded company. Upon information and belief, Nanya sells, offers to sell, and/or uses products and services throughout the United States, including in this

judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

7. Venue is proper as to Nanya in this judicial district under 28 U.S.C. §1391(c)(3). On information and belief, Nanya is not resident in the United States and may be sued in any judicial district.

8. On information and belief, Defendant is subject to this Court's general and specific personal jurisdiction because Defendant has sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Texas because Defendant purposefully availed itself of the privileges of conducting business in the State of Texas and in this District, because Defendant regularly conducts and solicits business within the State of Texas and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and this District.

9. On information and belief, Nanya Technology Corporation is a corporation organized under the laws of Taiwan with its headquarters in Taiwan. Nanya designs, imports, manufactures, markets, and sells Random Access Memory (RAM) throughout the world and in the United States. Nanya conducts business in Texas and in the Eastern District of Texas,

directly or through intermediaries (including subsidiaries, distributors, affiliates, retailers, suppliers, integrators, customers, and others).

10. Nanya is engaged in making, using, selling, offering for sale, and/or importing products, such as RAM, to and throughout the United States, including this District. Nanya also induces its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, and customers in the making, using, selling, offering for sale, and/or importing such products to and throughout the United States, including this District. To this end, Nanya and its foreign and U.S.-based subsidiaries—which act together as part of Nanya's global network of sales and manufacturing emissaries—have operated as agents of, and for, one another and have otherwise acted vicariously for Nanya as elements of the same business group and/or enterprise. Indeed, they work in concert and in orchestrated fashion, subject to agreements that are far nearer than arm's length, in order implement a distribution channel of infringing products within this District and the United States.

11. Nanya maintains a substantial corporate presence in the United States via at least its U.S.-based sales subsidiaries. Alone and through at least the activities of its U.S.-based sales subsidiaries (e.g., Nanya U.S.A. and Nanya Delaware), Nanya conducts business in the United States and this District, including importing, distributing, and selling DRAM that infringes the Asserted Patents.

12. Through importation, offers to sell, sales, distributions, and related agreements to transfer ownership of Nanya's products (e.g., DRAM) with distributors and customers operating in and maintaining significant business presences in the United States, Nanya does extensive business in the United States, this State, and this District.

# BACKGROUND

## The Invention

13. Kuljit S. Bains, John B. Halbert, and Randy B. Osborne are the inventors of U.S. Patent No. 7,281,079 ("the '079 patent"). A true and correct copy of the '079 patent is attached as Exhibit 1A.

14. The '079 patent resulted from the pioneering efforts of Kuljit S. Bains, John B. Halbert, and Randy B. Osborne (hereinafter "the '079 Inventors") in the area of banks of memory cells. These efforts resulted in the development of a method and apparatus for Method And Apparatus To Counter Mismatched Burst Lengths in 2003. At the time of these pioneering efforts, the most widely implemented technology used to address increasing the speed of the memory cells within the memory devices when increasing overall memory speed was focused on transfer rates of memory buses. In that type of system, increase in effective transfer rates on memory buses was done by providing memory interfaces with burst transfers of data at ever increasing clock rates. The '079 Inventors conceived of the inventions claimed in the '079 patent as a way to optimally increase the memory speed that can support any given piece of software.

15. For example, the '079 Inventors developed independent operation of the first and second groups of banks that provide the ability to compensate for inefficiencies in reading data from one of these two groups arising from a needed early termination of the bursting of data for a read operation.

16. Kuljit S. Bains, Navneet Dour, Hany Fahmy, George Vergis, and Christopher E. Cox are the inventors of U.S. Patent No. 7,432,731 ("the '731 patent"). A true and correct copy of the '731 patent is attached as Exhibit 2A.

17. The '731 patent resulted from the pioneering efforts of Kuljit S. Bains, Navneet Dour, Hany Fahmy, George Vergis, and Christopher E. Cox (hereinafter "the Inventors") in the area of calibrating memory. These efforts resulted in the development of a method and apparatus for Method And Apparatus To Calibrate DRAM On Resistance (Ron) And On-Die Termination (ODT) Values Over Process, Voltage And Temperature (PVT) Variations in 2005. At the time of these pioneering efforts, the most widely implemented technology used to address process, voltage and temperature (PVT) variations that affect integrated circuit performance were limited to calibrations during power up or auto-refresh operations. In that type of system, voltage and temperature variations would not be compensated or calibrated at all or only once during initialization and many times the calibrations would not be very accurate dure to significant signal noise. The '731 Inventors conceived of the inventions claimed in the '731 patent as a way to effectively calibrate termination and drive circuitry to account for process voltage and temperature variations.

18. For example, the '731 Inventors developed a command-based process to calibrate on-die termination circuitry in memory that could be accomplished at any given time, not just at power-up or refresh.

**Advantage Over the Prior Art**

19. The patented invention disclosed in the '079 patent provides many advantages over the prior art, and in particular the invention improves the operations of efficient utilization of the memory bus. (*See* '079 patent at Abstract, Figs. 2-4 and related description.) One

advantage of the patented invention is increased overall memory speed by minimizing the number of clock cycles during which there is inactivity between a memory device and another device, such as a memory controller. (*See* ’079 patent at 4:23-63.)

20. Another advantage of the patented invention is not wasting available bandwidth on a memory bus by operating two banks independent of each other such that recovery from burst transfer, termination and another memory operation can be operated alternatively. (*See* ’079 patent at 7:43-55.)

21. Because of these significant advantages that can be achieved through the use of the patented invention, PowerWatch believes that the ’079 patent presents significant commercial value for companies like Nanya. Indeed, memory bus scheduling sits at the center of a genuinely enormous market, with the DRAM memory market valued around $100 billion plus during the relevant damages period. Even a small efficiency or yield improvement multiplied across an industry this size is commercially significant — bus-utilization is the kind of thing large memory/chip makers license, cross-license, or litigate over precisely because of this scale. Industry roadmaps in memory have segmented effective bus utilization for speed and faster reflex/responses in interactive games including using high bandwidth memory bus for graphics load.

22. The patented invention disclosed in the ’731 patent provides many advantages over the prior art, and in particular improved the operations of a command-based calibration of on-die termination circuitry with a resistor coupled to a reference voltage. (*See* ’731 patent at Abstract.) One advantage of the patented invention is allowing calibration at different times, not just at startup, power-up, or auto-refresh operations, including calibrating for voltage and temperature variations. (*See* ’731 patent at 2:36-65.)

23. Another advantage of the patented invention is customizing longer and shorter calibration times that allow for process variations which remain consistent before and after initializations as compared to voltage and temperature variations that may change over time. (*See* ’731 patent at 2:49-57.)

24. Because of these significant advantages that can be achieved through the use of the patented invention, PowerWatch believes that the ’731 patent presents significant commercial value for companies like Nanya. Indeed, Command-based calibration of on-die termination (“ODT”) resistance coupled with reference-voltage calibration has substantial commercial value because these techniques support reliable, high-speed memory operation across variations in process, voltage, temperature, signaling conditions, and system configuration. Command-based calibration permits these functions to be initiated, controlled, and coordinated through the memory command architecture, facilitating automated calibration during initialization and operation without requiring extensive external circuitry or manual adjustment. Effective calibration of ODT resistance and reference voltage therefore contributes to reliable operation at commercially useful data rates, improved interoperability between memory devices and memory controllers, and reduced sensitivity to manufacturing and operating variations.

**Technological Innovation**

25. The patented invention disclosed in the ’079 patent resolves technical problems related to efficient memory bus utilization to achieve higher memory speeds, particularly problems related to the utilization of bandwidth of the memory bus. As the ’079 patent explains, one of the limitations of the prior art as regards the increase in memory cell and memory bus

speeds was that the bandwidth of the memory bus is not utilized efficiently with long recovery times after bursts termination. (*See* ’079 patent at 1:23-.2:41.)

26. The claims of the ’079 patent do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the ’079 patent recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to efficiently utilize the memory bus by reducing the non-used periods.

27. In addition, the claims of the ’079 patent recite inventive concepts that improve the functioning of memory, particularly improved memory speed by utilizing two independently operating banks.

28. Moreover, the claims of the ’079 patent recite inventive concepts that are not merely routine or conventional use of memory. Instead, the patented invention disclosed in the ’079 patent provides a new and novel solution to specific problems related to improving memory control logic by using two independently operable memory banks.

29. And finally, the patented invention disclosed in the ’079 patent does not preempt all the ways that memory control logic operates over the two or more independently operable banks may be used to improve the memory speed, nor does the ’079 patent preempt any other well-known or prior art technology.

30. Accordingly, the claims in the ’079 patent recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

31. The patented invention disclosed in the ’731 patent resolves technical problems related to command based calibration of on-die termination including a resistor coupled with a

reference voltage, particularly problems related to the utilization of calibration to correct process, voltage or temperature variations. As the ’731 patent explains, one of the limitations of the prior art as regards the limited time period available for calibration was that calibration was possible only during startup, power-up or auto-refresh operations, but voltage and temperature variations fluctuated over time. (*See* ’731 patent at 1:38-64.)

32. The claims of the ’731 patent do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the ’731 patent recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to calibrate on-die termination to correct process, voltage and temperature variations.

33. In addition, the claims of the ’731 patent recite inventive concepts that improve the functioning of the memory, particularly improved noise correction through an efficient calibration.

34. Moreover, the claims of the ’731 patent recite inventive concepts that are not merely routine or conventional use of memory. Instead, the patented invention disclosed in the ’731 patent provides a new and novel solution to specific problems related to improving command based calibration that can be achieved at different times using the controller.

35. And finally, the patented invention disclosed in the ’731 patent does not preempt all the ways that on-die termination could be calibrated to improve the correction for variations that are consistent or shift with time, nor does the ’731 patent preempt any other well-known or prior art technology.

36. Accordingly, the claims in the ’731 patent recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**ACCUSED PRODUCTS AND ACCUSED INSTRUMENTALITIES**

37. “Accused Instrumentalities” as used herein refers to at least Defendant’s systems and methods that include infringing memory cell components for volatile and non-volatile memory using at least one of the following: (i) DDR3 or later versions; (ii) DDR3 or later versions with ZQ calibration; (iii) DDR3 or later versions with ODT capabilities; (iv) DDR3 or later versions with two or more independently operable memory bank cells. Upon information and belief, the exemplary version herein and previous versions of the Accused Instrumentalities distributed prior to expiration of the patents in suit operated materially in the same manner.

38. Examples of infringing memory components used in Defendant’s products include Nanya DRAMs, Nanya SDRAMs, Nanya DIMMs, Nanya DDR3 DIMMs, DDR3(L) SDRAM, Nanya DDR3 SDRAMs, Nanya NT5U64m16GG DRAM, Nanya NT5TU64M16GC-AC, Nanya Elixir N2CB2G80BN-CG 50 nm 2Gbit DDR3 SDRAM, Nanya SDRAM NT5TU64M16GG, Nanya SDRAM NT6TL64M32AQ, Nanya DDR3(L)-2Gb J-Die NT5CB(C)256M8JQ/NT5CB(C)128M16JR and Nanya DDR4-8Gb C-Die NT5AD2048M4C3/NT5AD1024M8C3/NT5AD612M16C4 along with any hardware and/or software. Defendant manufactured, provided, used, sold, offered for sale, imported, and/or distributed Accused Instrumentalities incorporated in its hardware products (collectively, “Accused Products”). Exhibit 3 includes evidence of the sale of the Accused Products during the relevant damages period.

**NOTICE OF PATENTS IN SUIT**

39. Defendant was engaged in memory patents litigation asserted by Monterey Research LLC from November 4, 2019 to April 29, 2024. On information and belief, Monterey Research LLC is a wholly owned subsidiary of IPValue Management Inc. ("IPValue"). IPValue acquired Intel's memory portfolio along with other patents on August 8, 2022 that was publicly known. On information and belief, Nanya reviewed the patents acquired by IPValue and had actual notice of the patents in suit given their ongoing patent litigation during the same period. In the alternative, at a minimum, Nanya had constructive notice of the patents in suit based on the public releases related to the acquisition from Intel. (Exhibit 4.)

40. Defendant had actual notice and/or knowledge of the '079 patent, and the '731 patent since at least March 20, 2023, when the prior patent owner sent a notice of patent infringement to Nanya, copy of the original attached as Exhibit 5 that explicitly listed the patents in suit.

41. Defendants have had knowledge of the patents in suit and its infringement since at least the filing of the Original Complaint in this action, or shortly thereafter, including by way of this lawsuit.

**OWNERSHIP OF PATENTS IN SUIT**

42. PowerWatch is the exclusive owner of all rights, title, and interest in the patents in suit, including the right to exclude others and to enforce, sue and recover damages for past and future infringement thereof.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7.281.079**

43. The allegations set forth in the foregoing paragraphs 1 through ## are incorporated into this First Claim for Relief.

44. On October 9, 2007, U.S. Patent No. 7,281,079 ("the '079 patent"), entitled "Method And Apparatus To Counter Mismatched Burst Lengths," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '079 patent is attached as Exhibit 1A.

45. Plaintiff is the assignee and owner of the right, title and interest in and to the '079 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

46. The inventions of the '079 patent resolve technical problems related to increasing memory speed through efficient utilization of the memory bus. For example, the inventions allow parties to use two or more independently operable banks of memory cells without wasting time at end of burst and recovery time to continue subsequent memory operations. The inventions of the '079 patent resolve technical problems related to the use of memory bus within memory components. For example, the inventions allow parties to efficiently use the bandwidth of the memory bus by reducing wasted time that allows for end of burst length in data transfer and allows for recovery time which, on information and belief, are exclusively implemented utilizing memory bus in computer technology.

47. The claims of the '079 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '079 patent recite one or more inventive concepts that are rooted in memory controller technology, and overcome problems specifically arising in the realm of computerized memory technologies.

48. The claims of the '079 patent recite an invention that is not merely the routine or conventional use of memory. Instead, the invention shows how to efficiently utilize the memory

bus by using two or more independently operable memory cell banks. The ’079 patent claims thus specify how memory cell banks are manipulated to yield a desired result. The claims of the ’079 patent recite an invention that is not merely the routine or conventional use of memory systems and methods. Instead, the invention applies a model with control logic to independently operate two or more memory banks in order to utilize the full bandwidth of the memory bus without wasting time on end-of-burst and recovery to resume memory operations and rapidly execute data transfer. The ’079 patent claims thus specify how data obtained from a memory controller is manipulated to yield a desired result at a faster speed.

49. The technology claimed in the ’079 patent does not preempt all ways of using two or more memory cell banks, nor preempt the use of all memory bus, nor preempt any other well-known or prior art technology. The technology claimed in the ’079 patent does not preempt all ways of using memory controllers, nor preempt the use of all memory components, nor preempt any other well-known or prior art technology.

50. Accordingly, each claim of the ’079 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

51. Upon information and belief, Defendant has directly infringed at least claim 11 of the ’079 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities in the Accused Products from the date of the notice of the ’079 patent to the expiry of the ’079 patent.

52. Exemplary infringement analysis showing infringement of claim 11 of the ’079 patent is set forth in Exhibit 1B. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Nanya with respect to the ’079 patent.

PowerWatch reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the ’079 patent.

53. On information and belief, these Accused Instrumentalities are used marketed, provided to, and/or used by or for Defendant’s partners, clients, customers and end users across the country and in this District.

54. Defendant was made aware of the ’079 patent and its infringement thereof at least as early as August 8, 2022 or at least as early as the letter sent on March 20, 2023. *See supra* Notice of Patents in Suit section and Exhibit 4-5.

55. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the ’079 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendant’s partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the ’079 patent.

56. In particular, Defendant’s actions that aid and abet others such as its partners, customers, clients, and end users to infringe include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the ’079 patent and knowledge that its acts were inducing infringement of the ’079 patent since at least August 8, 2022 or since at least March 20, 2023 when Nanya received notice that such activities infringed the ’079 patent.

57. Upon information and belief, Defendant is liable as a contributory infringer of the ’079 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States computerized trading platforms to be especially made or adapted for use in an infringement of the ’079 patent. The Accused Instrumentalities are a material component for use in practicing the ’079 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

58. Since at least August 8, 2022 or at least March 20, 2023, Defendant’s infringement has been willful.

59. The ’079 patent expired on November 16, 2024. Plaintiff therefore asserts liability only for the period beginning with the notice of the ’079 patent, *i.e.*, August 8, 2022 or March 20, 2023 and ending at the date of expiration on November 16, 2024. Liability exists for this period because infringement occurred during the ’079 patent’s active term and is within the 6-year statutory window.

60. PowerWatch has been harmed by the Nanya’s infringing activities.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,432,731**

61. The allegations set forth in the foregoing paragraphs 1 through ## are incorporated into this First Claim for Relief.

62. On October 7, 2007, U.S. Patent No. 7,432,731 (“the ’731 patent”), entitled “Method And Apparatus To Calibrate DRAM On Resistance (Ron) And On-Die Termination (ODT) Values Over Process, Voltage And Temperature (PVT) Variations,” was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the ’731 patent is attached as Exhibit 2A.

63. Plaintiff is the assignee and owner of the right, title and interest in and to the ’731 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

64. The inventions of the ’731 patent resolve technical problems related to calibration of on-die termination including resistor coupled with a reference voltage. For example, the inventions allow parties to send command-based calibration that corrects for process, voltage and temperature variations. The inventions of the ’731 patent resolve technical problems related to the use of memory component methods and systems. For example, the inventions allow parties to efficiently model a command-based calibration that can occur at any time and is not limited to startup, power-up or auto refresh operations.

65. The claims of the ’731 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the ’731 patent recite one or more inventive concepts that are rooted in computerized memory controller technology, and overcome problems specifically arising in the realm of computerized calibration technologies.

66. The claims of the ’731 patent recite an invention that is not merely the routine or conventional use of memory. Instead, the invention relates to command based calibration of on-die termination including resistor coupled with a reference voltage. The ’731 patent claims thus specify how command based calibration is manipulated to yield a desired result of allowing calibration that changes with variations over time.

67. The technology claimed in the ’731 patent does not preempt all ways of using calibrated memory, nor preempt the use of all ways of calibrating memory, nor preempt any other well-known or prior art technology.

68. Accordingly, each claim of the ’731 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

69. Upon information and belief, Defendant had directly infringed at least claims 6-8 of the ’731 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities included in the Accused Products.

70. Exemplary infringement analysis showing infringement of claims 6-8 of the ’731 patent is set forth in Exhibit 2B. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Nanya with respect to the ’731 patent. PowerWatch reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the ’731 patent.

71. On information and belief, these Accused Instrumentalities are used, marketed, provided to, and/or used by or for Defendant’s partners, clients, customers and end users across the country and in this District.

72. Defendant was made aware of the ’731 patent and its infringement thereof at least as early as August 8, 2022 or March 20, 2022. *See supra* Notice of Patents in Suit section, Exs. 4-5.

73. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the ’731 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to

Defendant's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '731 patent.

74. In particular, Defendant's actions that aid and abet others such as its partners, customers, clients, and end users to infringe include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '731 patent and knowledge that its acts were inducing infringement of the '731 patent since at least August 8, 2022 or since at least March 20, 2023 when Nanya received notice that such activities infringed the '731 patent.

75. Upon information and belief, Defendant is liable as a contributory infringer of the '731 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States computerized trading platforms to be especially made or adapted for use in an infringement of the '731 patent. The Accused Instrumentalities are a material component for use in practicing the '731 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

76. Since August 8, 2022 or March 20, 2023, Defendant's infringement has been willful.

77. The '731 patent expired on September 13, 2025. Plaintiff therefore asserts liability for direct infringement only for the period beginning six years before the filing of this Complaint and ending at the date of expiration. Plaintiff therefore asserts liability for willful and indirect infringement only for the period beginning August 8, 2022 or March 20, 2023 and

ending at the date of expiration. Liability exists for this period because infringement occurred during the active term of the ’731 patent and is within the six year lookback statutory period.

78. PowerWatch has been harmed by the Nanya’s infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PowerWatch demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PowerWatch demands judgment for itself and against Nanya as follows:

A. An adjudication that the Nanya has infringed the ’079 patent; and the ’731 patent;

B. An award of damages to be paid by Nanya adequate to compensate PowerWatch for Nanya’s past infringement of the ’079 patent; and the ’731 patent, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of PowerWatch’s reasonable attorneys’ fees; and

D. An award to PowerWatch of such further relief at law or in equity as the Court deems just and proper.

Dated: September 24, 2026

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Deepali Brahmbhatt (*Admission pending*)
CA Bar No. 255646
dbrahmbhatt@devlinlawfirm.com
3120 Scott Blvd. #13
Santa Clara, CA 95054
Tel: (650) 254-9805

Timothy Devlin
1526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010
Fax: (302) 353-4251

*Attorneys for Plaintiff*
*PowerWatch Systems LLC*